## UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| ANDREHA NICOLE U., | Case No.  1:24-CV-00136-DCN-REP |
| Plaintiff, | |
| vs. | **REPORT AND RECOMMENDATION** |
| MICHELLE KING, Acting Commissioner of Social Security, | |
| Defendant. | |

Pending is Petitioner Andreha Nicole U.'s Petition for Review (Dkt. 1) and an accompanying Brief in Support of Petition to Review (Dkt. 16) appealing the Social Security Administration's final decision finding her not disabled and denying her claim for disability insurance benefits.  *See* Pet. for Rev. (Dkt. 1).  This action is brought pursuant to 42 U.S.C. § 405(g).  Having carefully considered the record and otherwise being fully advised, the Court enters the following Report and Recommendation.

## <u>ADMINISTRATIVE PROCEEDINGS</u>

Petitioner is a forty-one-year-old woman who suffers a range of cognitive limitations, including vision loss, chronic migraines, and reduced concentration.  These limitations are the result of a ruptured cerebral aneurysm, hemorrhagic stroke, and craniotomy that Petitioner experienced in her late twenties.  Petitioner has applied for disability benefits twice.  Petitioner first filed an application for social security disability income ("SSDI") and supplemental security income ("SSI") in November 2014.  AR 80.  The claim was denied initially and on reconsideration, and Petitioner requested a hearing in front of an Administrative Law Judge

**REPORT AND RECOMMENDATION - 1**

("ALJ"). AR 76. Before the hearing occurred, Petitioner voluntarily withdrew her claim for disability benefits. AR 47-48, 76.

During the following years, Petitioner attempted to find and maintain employment. Petitioner contends, however, that she was fired from every job she obtained due to forgetfulness, mistakes, and migraine-related absenteeism. AR 614, 940-942; *see also* Pt.'s Br. at 3 (Dkt. 16).

In August 2019, Petitioner filed her second application for benefits, alleging a disability onset date of April 1, 2019. AR 19. The claim was denied at every level and Petitioner appealed to federal court. *See Andreha U. v. Kijakazi*, No. 1:21-CV-00302-CWD, 2022 WL 4465591 (D. Idaho Sept. 26, 2022). On September 26, 2022, the Honorable Candy W. Dale issued a decision reversing the decision of the Social Security Administration. *Id*.

On remand, the claim was assigned to a new ALJ. AR 893-920. After holding a second disability hearing, the ALJ issued yet another decision rejecting Petitioner's claim for disability benefits. *Id.* Petitioner did not appeal this decision to the Appeals Council. After sixty days, consequently, the ALJ's decision became the final decision of the Commissioner of Social Security. AR 891.

Having exhausted her administrative remedies, Petitioner filed this case. Petitioner raises five points of error. First, Petitioner contends that the ALJ failed to provide a sufficiently detailed analysis of whether Petitioner's migraines qualify as presumptively disabling under Listing 11.02. Second, Petitioner maintains that the ALJ failed to provide clear and convincing reasons for rejecting her testimony about the frequency and severity of her migraines. Third, Petitioner argues that the ALJ improperly rejected the opinion of the consulting examiner, Dr. Michael P. Emery. Fourth, Petitioner claims that the ALJ neglected to provide germane reasons

**REPORT AND RECOMMENDATION - 2**

for disregarding the letters written by her family and friends.  Finally, Petitioner complains that

the RFC does not adequately reflect her visual limitations.

## **STANDARD OF REVIEW**

To be upheld, the Commissioner's decision must be supported by substantial evidence

and based on proper legal standards.  42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664 (9th

Cir. 2017).  Findings as to any question of fact, if supported by substantial evidence, are

conclusive.  42 U.S.C. § 405(g).  In other words, if there is substantial evidence to support the

ALJ's factual decisions, they must be upheld, even when there is conflicting evidence.  *See*

*Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v.

Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).  The standard requires more than a scintilla but less

than a preponderance.  *Trevizo*, 871 F.3d at 674.  It "does not mean a large or considerable

amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the Court is to review the record as a whole to decide

whether it contains evidence that would allow a person of a reasonable mind to accept the

conclusions of the ALJ.  *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051.  The

ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and

resolving ambiguities.  *Treichler*, 775 F.3d at 1098.  Where the evidence is susceptible to more

than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are

supported by inferences reasonably drawn from the record.  *Ludwig*, 681 F.3d at 1051.  In such

cases, the reviewing court may not substitute its judgment or interpretation of the record for that

of the ALJ.  *Batson v. Comm'r of Social Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

**REPORT AND RECOMMENDATION - 3**

The decision must be based on proper legal standards and will be reversed for legal error. *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015); *Treichler*, 775 F.3d at 1098. Considerable weight is given to the ALJ's construction of the Social Security Act. *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009). However, this Court "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

## THE SEQUENTIAL PROCESS

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is work activity that is both substantial and gainful. 20 C.F.R. §§ 404.1572, 416.972. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant is engaged in SGA, disability benefits are denied regardless of her medical condition, age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step.

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination

**REPORT AND RECOMMENDATION - 4**

of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" if it does not significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522, 416.922. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal a listed impairment, the claim cannot be resolved at step three and the evaluation proceeds to step four. 20 C.F.R. §§ 404.1520(e), 416.920(e).

In the fourth step of the evaluation process, the ALJ decides whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. §§ 404.1545, 416.945. An individual's past relevant work is work she performed within the last 15 years, or 15 years prior to the date that disability must be established, if the work was substantial gainful activity and lasted long enough for the claimant to learn to do the job. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.

**REPORT AND RECOMMENDATION - 5**

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of her impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Garrison v. Colvin,* 759 F.3d 995, 1011 (9th Cir. 2014).  If the claimant can do such other work, she is not disabled; if the claimant cannot do other work and meets the duration requirement, she is disabled.

## THE ALJ'S FINDINGS

The ALJ found that Petitioner suffers from the following severe impairments: status post aneurysm surgeries, migraines, status post left ACL/meniscus surgery, internal derangement of the left shoulder, status post left shoulder surgery, degenerative disc disease of the cervical thoracic and lumbar spine, scoliosis, SI joint spurring, attention deficit disorder, cognitive impairment due to brain trauma, major depressive disorder, and anxiety.  AR 896.  The ALJ determined that these impairments limit Petitioner's ability to engage in work-related activities in a variety of manners, including that Petitioner cannot perform work at "fast or fixed production rate/pace."  AR 900.  Based on the testimony of a vocational expert ("VE"), the ALJ concluded that these limitations would prevent Petitioner from returning to her past work as a phlebotomist, telephone sales representative, medical clerk, day care teacher, waitress, and customer service representative.  AR 919.  The ALJ found, however, that Petitioner's limitations would not prevent her from performing an alternative range of light jobs, including working as a cleaner, cashier, or marker.  AR 919-920.  The ALJ, therefore, found that Petitioner was not disabled. AR 920.

**REPORT AND RECOMMENDATION - 6**

**DISCUSSION**

I.  The ALJ's Assessment of Listing 11.02

      Petitioner's first challenge on appeal is that the ALJ should have found her migraines disabling under Paragraph B of Listing 11.02.[1] Pt.'s Br. at 5-9 (Dkt. 16).  For a migraine disorder to qualify as presumptively disabling under this Paragraph, a claimant must establish that she has migraines (i) which are equal in severity to dyscognitive seizures and (ii) which occur at least once a week for at least three consecutive months, despite adherence to prescribed treatment.  *See* SSR 19-4p, 2019 WL 4169635, at *7.

      Contrary to what Petitioner argues in the opening brief, the ALJ expressly considered Petitioner's migraines under Listing 11.02.  AR 898.  The ALJ, however, found that her migraines were not sufficiently intense or frequent to satisfy Listing 11.02's criteria.  *Id.*  In other words, the ALJ found that Petitioner does not have at least one migraine a week that is equal in severity to a dyscognitive seizure.  As best the undersigned can tell, Petitioner is contending that ALJ did not sufficiently explain this finding and that her decision, consequently, must be reversed.  Pt.'s Br. at 7 (Dkt. 16).  The undersigned disagrees.

      While the ALJ did not provide a lengthy discussion of the migraine-related evidence at Step Three, this discussion is not absent from the opinion.  It is simply in a different section.  In the section of the decision explaining the RFC, the ALJ discussed Petitioner's migraines and migraine-related treatment at length and explained why she was not crediting Petitioner's reports about the frequency and severity of her migraines.  It was not erroneous for the ALJ to summarize this analysis at Step Three, rather than restate it in full.  *See Lewis v. Apfel*, 236 F.3d

---

[1] Because they do not have their own listing, headache disorders are evaluated under Listing 11.02, the listing for epilepsy.  *See* Social Security Ruling ("SSR") 19-4p, 2019 SSR LEXIS 6, 2019 WL 4169635, at *7 (Aug. 26, 2019).

**REPORT AND RECOMMENDATION - 7**

503, 513 (9th Cir. 2001) (while an ALJ is required to discuss and evaluate evidence that supports his conclusions, he is not required to do so under any specific heading) and *Ozolins v. Saul*, 849 F. App'x 682, 683 (9th Cir. 2021) (unpublished) ("Although the ALJ's explanation might have been more robust, her lengthy evaluation of the evidence elsewhere 'is an adequate statement of the foundations on which the ultimate factual conclusions are based.'") (citing *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990)).

To the extent Petitioner disagrees with the *substance* of the ALJ's credibility findings, this challenge is redundant with the second issue Petitioner raises on appeal, and the undersigned will address these arguments together in the next section.

## II.  Petitioner's Credibility

According to her most recent statements, Petitioner has been crippled by an assembly of chronic health problems, including migraines, low back pain, shoulder pain, depression and anxiety, short-term memory loss, and fatigue.  AR 1375-1384.  Petitioner alleges that these conditions have put her in position where she is "fight[ing] for [her] life every day."  AR 1380. Relevant here, Petitioner reports that she currently experiences approximately 5-7 migraines a month, with each migraine lasting between 4-72 hours.  AR 1376.  Petitioner claims that these migraines are so intense that she spends a lot of time throwing up from the pain and cannot work through them.  *Id.*

When evaluating the reliability of such testimony, the ALJ engages in a two-step analysis.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991).  Second,

**REPORT AND RECOMMENDATION - 8**

if such objective medical evidence exists, and the ALJ has not determined that the claimant is malingering, the ALJ must provide clear and convincing reasons before rejecting the claimant's testimony regarding the severity of the claimant's symptoms. *Id.*

Generalized findings will not satisfy this standard. The reasons an ALJ provides for rejecting a claimant's symptom testimony "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony . . ." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell*, 947 F.2d at 345-46). In other words, "the 'clear and convincing' standard requires an ALJ to show his work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

On appeal, the district court's role is to review, not redo, this work. If the ALJ's rationale for rejecting a petitioner's testimony is "clear enough that it has the power to convince," the Court must affirm whether the Court is personally persuaded by the analysis or not. *Smartt*, 53 F.4th at 499.

## a. The ALJ's Credibility Findings

The first ALJ to consider Petitioner's credibility was ALJ Wynne O'Brien Persons. AR 33. He acknowledged that Petitioner had serious cognitive issues, including migraines, vision loss, anxiety, and depression. AR 22. ALJ O'Brien Persons, however, did not believe that these conditions were as debilitating as Petitioner claims. AR 24-31.

Petitioner successfully appealed this determination. On September 26, 2022, Judge Dale found, among other things, that ALJ O'Brien Persons had not provided clear and convincing reasons for rejecting Petitioner's testimony about the frequency and severity of her migraines.

**REPORT AND RECOMMENDATION - 9**

*Andreha U.*, 2022 WL 4465591, at *6-12. To remedy the error, Judge Dale reversed and remanded the case for further proceedings. *Id.* at *14-15.

On remand the case was assigned to a new ALJ – ALJ Michele M. Kelley. AR 920. ALJ Kelley held a second disability hearing, where Petitioner once again testified. AR 931-962. As outlined above, Petitioner continued to aver that her migraines, memory loss, and concentration issues prevent her from maintaining competitive employment. AR 940-949 and 1375-1384. Petitioner asserted several new issues as well, including debilitating back and neck pain. *Id.*

ALJ Kelley did not find Petitioner's testimony credible. To explain why she had reached this conclusion, ALJ Kelley wrote an unusually long opinion, which elaborated upon the analysis of ALJ O'Brien Persons. As it related to Petitioner's migraines, for example, ALJ Kelley adopted parts of ALJ O'Brien Persons's reasoning verbatim, writing that:

> The claimant has alleged that she has frequent headaches, but some records noted that the claimant reported only having a migraine headache every 2 to 3 weeks, which stands in stark contrast to the claimant's allegations of regular lengthy headaches. Also, injections for headaches were noted to have reduced the frequency of her headaches.

*Compare* AR 30 *with* AR 917. ALJ Kelley, however, did not stop there. She added at least two new observations about Petitioner's migraines. First, ALJ Kelley reasoned that:

> Were the claimant to have such significant headaches, then the treatment records would likely have noted in the objective findings that the claimant was in acute distress, but very few records noted that the claimant was in any distress. As noted above, throughout the alleged period of disability, the claimant was usually in no distress, no acute distress, no apparent distress, well appearing, alert, attentive.

AR 911. Second, ALJ Kelley observed that "[d]espite headache complaints with alleged word-finding issues, the examinations noted unremarkable findings . . ." AR 916.

**REPORT AND RECOMMENDATION - 10**

ALJ Kelley also provided specific reasons for questioning Petitioner's statements about her other conditions. AR 900-918. ALJ Kelley, for example, found that Petitioner's claim to have a "non-existent" memory and noticeably impaired conversational abilities were belied by her mental status examinations, which were often unremarkable and included "multiple mental status examinations that indicated no memory difficulty whatsoever." *Id.* Similarly, ALJ Kelley found that Petitioner's statements about her back and neck pain – which Petitioner described as so debilitating that it is difficult for her to get out of bed without assistance – did not align with Petitioner's "fairly" active lifestyle, including trips to the river, playing Frisbee golf, and cooking, cleaning, and decorating over Thanksgiving. *Id.* In short, ALJ Kelley found that Petitioner overstated impact of all her medical conditions, not just her migraines. AR 905.

   *b. Discussion*

This is difficult case. On appeal, Petitioner does not challenge the ALJ's rejection of her testimony about her memory issues, concentration, social isolation, or physical pain. She focuses on her migraines. "Migraines are one of the more challenging impairments for ALJs to address because determining the nature and extent of a claimant's impairment rests heavily on an assessment of the claimant's subjective symptoms . . . rather than objective measures." *Rabdeau v. Kijakazi,* No. 22-CV-674, 2023 WL 5672596, at *6 (E.D. Wis. Sept. 1, 2023).[2]

When assessing a claim of disabling migraines, ALJs are stuck between the proverbial rock and a hard place. On the one hand, the introduction of medical evidence showing that a

---

[2] *See also Howerton v. Colvin*, No. 13-CV-337, 2015 WL 569712, at *5 (S.D. Ohio Feb. 11, 2015), *report and recommendation adopted* 2015 WL 1476668 (S.D. Ohio Mar. 31, 2015) (the "ALJ faced a particularly challenging task when assessing Plaintiff's credibility regarding the severity, persistence, and limiting effects of her migraine pain" because "[p]ain is an elusive phenomena" and "no one can say with certainty that another person's subjectively disabling pain precludes all substantial gainful employment") and Pt.'s Br. at 7 (Dkt. 16) ("there is little objective medical testing for migraines; diagnosis and treatment are based upon patient complaint and symptoms").

**REPORT AND RECOMMENDATION - 11**

claimant "has an ailment reasonably expected to produce some pain," such as migraines, does not require an ALJ to credit "every allegation of disabling pain." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). It if did, "disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Id.*; *see also Smartt*, 53 F.4th at 499 (explaining that "a claimant's subjective evidence" does not "trump all other evidence in a case").

On the other hand, migraines, and other conditions that cause objectively unverifiable pain, can be disabling. And, it is not permissible for ALJs to discount claims that are based on such conditions out of hand. When a medical impairment has been established, the ALJ must provide specific, cogent, clear, and convincing reasons before discrediting a claimant's symptom testimony. *Ahearn v. Saul*, 988 F.3d 1111, 1116 (9th Cir. 2021).

Here, the ALJ was faced with a complicated record that contains competing signals about Petitioner's credibility. Judge Dale's decision outlines many of the factors that favor Petitioner. First, Judge Dale found that Petitioner's statements to her medical providers *generally* aligned with her testimony about her migraines.[3] *See Andreha U.*, 2022 WL 4465591, at *9 (discussing Petitioner's pre-2021 statements). This remained true on remand. *Compare* AR 943 (reporting 4-31 migraine days per month at the second disability hearing) and 1376 (5-7 migraines per month, lasting 4-72 hours each) *with* 1415 (8 migraine days per month), 1682 (6 migraine days

---

[3] There is at least one conflicting medical record. On April 8, 2020, when she was not currently taking any prescription medication for migraines, Petitioner told her primary care provider that she was having migraines 2-3 times per week, but had previously received Amovig injections, which spaced her headaches "to every 2-3" weeks. AR 669. This clashes with the Headache Questionnaire Petitioner completed on October 7, 2019. AR 352-353 (reporting 3-4 headaches per week while taking Amovig). Both ALJs highlighted this conflict. AR 30, 917. Its relevance, however, is limited to the present analysis. In her September 26, 2022 decision, Judge Dale determined that the inconsistency between the April 8, 2020 record and the rest of Petitioner's statements was too isolated to justify the ALJ's rejection of Petitioner's testimony. *Andreha U.*, 2022 WL 4465591, at *10. This determination remains law of the case. *Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016) (the law of the case doctrine applies in the social security context).

**REPORT AND RECOMMENDATION - 12**

per month), 1731 (7 migraine days per month), 1813 (5 migraine days per month), 1836 (1

migraine a week, lasting 6-48 hours), 1920 (1 migraine a week), 2928 (7 migraine days per

month), 3017 (7 migraine days per month), 3087 (5 migraine days per month), 3104 (5 migraine

days per month).  Second, while Petitioner has reported some improvement with treatment,

including significant improvement from the Botox injections that she began receiving *after* the

first ALJ's decision was issued,[4] she has not reported the kind of consistent relief that would

render her capable of normal full-time employment.  *Andreha U.*, 2022 WL 4465591, at *10.

Finally, it is undisputed that Petitioner suffered severe brain trauma and underwent a

craniotomy,[5] which could *potentially* explain the onset of chronic migraines.

　　　　But there are also indications in the record that Petitioner's assessment of her own

functioning is more dire than warranted.  Most notably, Petitioner has reported difficulty with

basic conversation, such as loosing track of what she is saying mid-sentence "on a regular basis"

and saying the wrong word.  AR 946, 1378-1379.  She says people have compared her to

someone with dementia.  AR 946.  As the ALJ repeatedly noted, however, these issues are not

reflected in the vast majority of Petitioner's mental status examinations.  AR 1630 (no word-

finding difficulty during the exam); AR 562, 572, 630, 883, 879, 1747, 1751, 1755, 1760, 1765,

1770, 1774, 1778, 1782, 2846, 2850, 2854, 2858 (noting normal attention and concentration,

intact memory, good judgment, and above average intelligence at Petitioner's psychiatric

---

[4] At and before her first disability hearing, Petitioner reported roughly 2-4 migraines a week.  AR 53-54, 352-353, 669, 712, 720, 728, 1425.  In June 2021, however, Petitioner began receiving Botox injections and started reporting closer to 1-2 migraines a month.  AR 943, 1376, 1415, 1682, 1731, 1813, 1836, 1920, 2928, 3017, 3087, 3104.

[5] In 2012, when she was only twenty-eight-years-old, Petitioner suffered a ruptured cerebral aneurysm and hemorrhagic stroke.  AR 1382-1383 and 2966.  Subsequent imaging of her brain revealed arteriovenous malformations (AVMs).  To treat this condition, Petitioner underwent a craniotomy.  AR 1382-1383 and 2966.

**REPORT AND RECOMMENDATION - 13**

appointments); and AR 1829-1830 (average expressive language ability and intact memory, and low-average concentration). Even the consulting psychologist who took the most dismal view of Petitioner's mental functioning found that Petitioner had greater capacity than she subjectively reported. AR 913 (citing AR 616-617). In short, the record suggests that Petitioner may be overstating the impact of her impairments.[6]

While the undersigned may have weighed these competing signals differently than the ALJ did here, that is not a basis for reversal. The undersigned did not observe Petitioner testify and cannot form as well-rounded a view of Petitioner's credibility as ALJ Kelley did. *See Molina v. Astrue*, 674 F.3d 1104, 1120-1121 (9th Cir. 2012) (agreeing that "it is the ALJ's prerogative to determine the credibility of witnesses" because the ALJ "is generally in a unique position to observe the witnesses' demeanor and conduct"); *see also Hernandez v. Chater*, 87 F.3d 1319 (Table), 1996 WL 341951, at *1 (9th Cir. 1996) (unpublished) ("[T]he ALJ, having observed the witnesses, is in a far better position to weigh the evidence than an appellate court reviewing a cold transcript of the testimony"). The Court's role on appeal is merely to resolve whether or not the ALJ provided legally adequate reasons for the adverse credibility determination. The ALJ's decision clears this bar.

First, the ALJ identified direct conflicts between the medical record and Petitioner's testimony about her alleged memory loss and chronic physical pain. AR 900-918. These were rational reasons for the ALJ to question Petitioner's general credibility. *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) ("To determine whether the claimant's testimony regarding

---

[6] The undersigned has great sympathy for Petitioner. Petitioner has clearly faced significant health issues and is understandably distressed by her situation. In pointing out the discrepancies between the record and Petitioner's testimony, the undersigned is not questioning her honesty or expressing a personal opinion about her credibility. The undersigned is merely pointing out that a reasonable adjudicator, like the ALJ, could find that Petitioner's beliefs about her abilities do not reflect her actual capacity.

**REPORT AND RECOMMENDATION - 14**

the severity of her symptoms is credible, the ALJ may consider, for example. . . ordinary techniques of credibility evaluation, such as . . . other testimony by the claimant that appears less than candid.") and *Fair*, 885 F.2d at 604 n.5 (if a claimant "is found to have been less than candid in other aspects of [her] testimony, that may be properly taken into account in determining whether or not [her] claim of disabling pain should be believed").

Second, the ALJ observed that while Petitioner reported daily headaches and between 5-15 long-lasting migraines a month during the period of alleged disability, very few of the objective medical records document Petitioner being in distress.  Reasonable jurists could disagree about the inferences to be drawn from this fact.  The undersigned, however, cannot say that the unfavorable conclusion the ALJ reached was unreasonable or otherwise lacked the power to convince.  *See, e.g., Jacqueline D. v. Comm'r of Soc. Sec.*, No. 2:20-CV-0365, 2021 WL 4083408, at *5 (E.D. Wash. Sept. 8, 2021) (agreeing that "the frequency and intensity of [a petitioner's] reported migraines [were] inconsistent with the record" where the petitioner "allegedly suffer[ed] from multiple migraines per week, but her medical exams [did] not reveal any acute distress").  Here, Petitioner alleges that she had been suffering from an appalling number of completely debilitating migraines, with daily pain, for years on end.  It was not illogical for the ALJ to look for some evidence of these migraines at Petitioner's numerous medical appointments.

In summary, the ALJ provided at least two clear and convincing reasons for rejecting Petitioner's descriptions of the frequency and severity of her migraines.  This is all that the law requires.  *See Batson v. Comm'r of Social Sec.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (even if the record does not support one of the ALJ's stated reasons for disbelieving a claimant's testimony, the error will be harmless if the ALJ provides other valid reasons for the decision).  The

**REPORT AND RECOMMENDATION - 15**

undersigned, consequently, recommends that the Court uphold the ALJ's adverse credibility determination.

III. The Medical Opinion Evidence

Petitioner's third challenge on appeal relates to the ALJ's weighing of the medical opinion evidence. For claims filed on or after March 27, 2017, the ALJ evaluates the persuasiveness of each medical opinion based on several factors, including supportability, consistency, relationship with the claimant, and specialization. 20 C.F.R. § 404.1520c(a). The ALJ's duty to articulate a rationale for each factor varies. 20 C.F.R. §§ 404.1520c(a)-(b).

Supportability and consistency are the most important factors, and the ALJ, therefore, must explain how both factors were considered. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022); 20 C.F.R. § 404.1520c(b)(2). The factor of supportability looks inward at a medical opinion's bases: "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). The factor of consistency, on the other hand, looks outward, comparing the opinion to the other evidence in the record: "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c (c)(2).

The Court reviews the ALJ's persuasiveness determinations under these regulations using the substantial evidence standard. To be upheld, "an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Woods*, 32 F.4th at 787.

**REPORT AND RECOMMENDATION - 16**

*a. The Competing Opinions of the Consulting Psychologists*

The record contains four different medical opinions[7] assessing Petitioner's mental functioning.  First, a consulting psychologist, Dr. Michael P. Emery, examined Petitioner on December 3, 2019.  AR 614.  Dr. Emery found that Petitioner experienced depression, anxiety, and short-term memory loss due to brain trauma.  AR 616.  Dr. Emery rated Petitioner's memory "markedly impaired," her concentration "unimpaired," her social functioning "moderately impaired," and her "[g]eneral adaptation" markedly impaired.  AR 617.

Second, on December 31, 2019, another psychologist, Dr. Mack Stephenson, reviewed Dr. Emery's report, Petitioner's medical records, and her function reports.  AR 99-105.  Based on all the information available to him, Dr. Stephenson rated (i) Petitioner's ability to understand, remember, and apply information as moderately impaired, (ii) her ability to interact with others as mildly impaired, (iii) her ability to concentrate, persist, and maintain pace as moderately impaired and (iv) her ability to adapt or manage herself as moderately impaired.  AR 100.  Dr. Stephenson determined that these limitations would not prevent Petitioner from performing simple unskilled work.[8]  AR 99, 104-105.

Third, on remand, a different agency psychologist, Dr. Dave Sanford, took another look at the case.  AR 1000.  Dr. Sanford took the most optimistic view of Petitioner's mental functioning.  He concluded that Petitioner was only mildly impaired in her ability to interact with others and adapt or manage herself, and not at all impaired in her ability to understand,

---

[7] For ease of reference, the undersigned uses the term "medical opinions," colloquially, to include both the "medical opinions" and the "prior administrative medical findings."  *See* 20 C.F.R. § 404.1560.

[8] Dr. Stephenson's opinion was affirmed on reconsideration by a reviewing psychologist, Dr. J. Michael Dennis.  AR 116-117 and 120-123.

**REPORT AND RECOMMENDATION - 17**

remember, or apply information, and concentrate, persist, or maintain pace. AR 99. This opinion was once again endorsed on reconsideration by Dr. Dennis. AR 1015.

Lastly, Petitioner was evaluated by a second consulting psychologist, Dr. Jacob Atkinson on April 13, 2023. AR 1826. The evaluation included a mental status examination, which revealed, among other things, that Petitioner has speech within normal limits, grossly average intelligence, low-average receptive language abilities, average expressive language abilities, intact memory, and a low-average ability to concentrate. AR 1829-1830. Dr. Atkinson concluded that Petitioner was moderately impaired in understanding, remembering, and carrying out simple instructions, mildly impaired in her social interactions, "slightly impaired" in her ability concentration due to her ADHD, and had some limitation in persistence and pace based on her "reported physical pain and limitations." AR 1833-1834.

These opinions presented a genuine conflict, which the ALJ had a duty to resolve. *See Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (it is the ALJ's responsibility to determine credibility and resolve conflicts within the record). The ALJ satisfied this duty by discussing each medical opinion in some detail and rejecting the opinions falling on each extreme. AR 913-918. Instead, the ALJ credited the relatively more moderate opinions of Dr. Stephenson and Dr. Atkinson. *Id.*

b. *Discussion*

Petitioner's primary disagreement with the ALJ's analysis of the medical opinion evidence is that the ALJ did not provide adequate reasons for crediting Dr. Stephenson's opinion over Dr. Emery's.[9] This argument is unpersuasive.

---

[9] Petitioner also argues, in passing, that that ALJ did not fairly incorporate Dr. Atkinson's findings into the RFC. Pt.'s Br. at 15 (Dkt. 16). This argument is underbaked and unpersuasive. The RFC restricts Petitioner to simple work with that is not "fast or fixed production rate/pace." AR 900. This was a reasonable translation of Dr. Atkinson's and Dr. Stephenson's findings. *See Stubbs-Danielson v. Astrue*,

**REPORT AND RECOMMENDATION - 18**

As required by the regulations, the ALJ considered the supportability and consistency of each medical opinion. AR 913-918. The ALJ found that Dr. Emery's opinion was one of the least persuasive because (i) it was inconsistent with most of the other mental status examinations in the file, finding that claimant had intact recent and remote memory, (ii) it appeared to be based heavily on Petitioner's subjective statements, and (iii) conflicted with Petitioner's reported activities, which included "fairly frequent" social contact. AR 913-914. The ALJ's analysis is supported by substantial evidence.

i.    The Conflict Between Dr. Emery's Opinion and the other Mental Status Examinations

As already discussed above, the ALJ highlighted and cited multiple mental status examinations "that indicated no memory difficulty whatsoever." AR 904; *see also* AR 912-915. These examinations stand in direct tension with Dr. Emery's finding that Petitioner had "markedly" impaired memory. *Compare* 617 *with* AR 562, 572, 630, 883, 879, 1747, 1751, 1755, 1760, 1765, 1770, 1774, 1778, 1782, 2846, 2850, 2854, 2858 (noting intact memory at Petitioner's psychiatric appointments) and AR 1829-1830 (finding intact memory during Petitioner's April 2023 mental status examination). They provided a reasonable basis, standing alone, for the ALJ to credit Dr. Stephenson over Dr. Emery. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (incongruity between a medical opinion and the Plaintiff's medical records is a specific and legitimate reason for rejecting that opinion).

Petitioner attempts to avoid this conclusion by arguing that "there is no evidence that" Petitioner's mental health provider, who performed the majority of the mental status examinations in the record, "administered memory tests comparable to the tests Dr. Emery

---

539 F.3d at 1173-1174 (a limitation to "simple, routine, repetitive" work can reasonably capture a petitioner's moderate deficiencies in concentration, persistence, or pace).

**REPORT AND RECOMMENDATION - 19**

administered." Pt.'s Br. at 15 (Dkt. 16).  This argument is riddled with holes.  To begin, Petitioner ignores Dr. Atkinson's conflicting report.  In April 2023, Dr. Atkinson performed similar memory tests on Petitioner to those employed by Dr. Emery.  *Compare* AR 616 *with* AR 1830.  Dr. Atkinson, however, reached a different conclusion, finding that Petitioner's memory was intact.  AR 1830.

Even if Dr. Atkinson's report did not exist, Petitioner's attempt to explain away the tension between her psychiatric records and Dr. Emery's findings misunderstands the substantial evidence standard.  The question on appeal is not whether substantial evidence exists to support the Petitioner's preferred findings, but whether substantial evidence supports the ALJ's findings. *Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997).  Here, Petitioner's mental health provider – PA Gladys Joana Gonzales – treated Petitioner over the course of multiple years.  It was more than reasonable for the ALJ to consider her records as probative evidence of Petitioner's memory issues, or lack thereof.   Indeed, it strikes the undersigned that someone who regularly talked to and met with Petitioner would have a better understanding of Petitioner's short-term memory deficits, if any, than a one-time evaluator, like Dr. Emery, who conducted a few basic memory tests, including, for example, asking Petitioner what she had for dinner the night before.  AR 616.  In short, the ALJ reasonably found that Dr. Emery's report conflicted with the other mental status examinations.

ii.    Dr. Emery's Reliance on Petitioner's Subjective Statements

The second reason the ALJ gave for rejecting Dr. Emery's opinion was that it was based primarily on Petitioner's subjective complaints.  AR 913.  The Ninth Circuit has repeatedly held that an ALJ may not reject the report of a psychologist "simply because of the relative imprecision of the psychiatric [or psychologic] methodology" which necessarily depends "in part

**REPORT AND RECOMMENDATION - 20**

on the patient's self-report, as well as on the clinician's observations of the patient." *Buck v. Berryhill*, 869 F.3d 1040, 1049) (9th Cir. 2017). But this does not mean that psychological opinions are insulated from all review. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216-17 (9th Cir. 2005) (upholding the rejection of two psychological assessments where those assessments were brief, conclusory, and unsupported by any "clinical evidence" other than the Petitioner's unadorned subjective complaints).

Here, it is clear that the ALJ did not reject Dr. Emery's opinion because of the inherent imprecision of the psychologic method. Rather, the ALJ was faced with competing psychological opinions, all of which applied similar methodology to the available evidence. The ALJ reasonably concluded that Dr. Emery appears to have relied more on Petitioner's subjective reports, than Dr. Stephenson, who (i) considered the *entire* medical record, including Dr. Emery's test results, (ii) found that Dr. Emery's report was not well-supported by his own testing, and (iii) issued an opinion about Petitioner's mental functioning that ended up being more consistent with the testing performed by Dr. Atkinson in 2023. AR 105-106.

### iii.    Petitioner's Reported Activities

The final reason the ALJ provided for rejecting Dr. Emery's opinion is unchallenged by Petitioner. As outlined above, Dr. Emery found that Petitioner's social functioning was "moderately impaired." AR 617. The ALJ rationally concluded that this did not accord with Petitioner's reported social activities, which include taking public transportation, leaving the house on a daily basis for various errands, seeing her family, watching sports and going to sporting events with friends, playing frisbee golf, preparing for the holidays, and camping. AR 899, 914. This was yet another, independently valid, reason for the ALJ to reject Dr. Emery's opinion in favor of Dr. Stephenson and Dr. Atkinson's less restrictive assessments. *See Ford v.*

**REPORT AND RECOMMENDATION - 21**

*Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) (a conflict between a medical opinion and a claimant's activity level is a legitimate reason for rejecting the opinion).

### iv.    The One-Time Nature of Dr. Emery's Examination

As part of her comparison of the medical opinion evidence, the ALJ noted that Dr. Emery performed a "one-time" examination of Petitioner. AR 918. Petitioner finds fault with this comment. Pt.'s Br. at 14 (Dkt. 16). Petitioner is correct that the one-time nature of Dr. Emery's examination was not a sufficient reason, standing alone, to explain the ALJ's rejection of the opinion. But that does not mean it was an invalid factor for the ALJ to mention. 20 C.F.R. §§ 404.1520c(c). The ALJ clearly knew that the reviewing psychologists did not personally evaluate Petitioner. By highlighting the lack of an ongoing relationship between Petitioner and Dr. Emery, the ALJ was not suggesting otherwise. The ALJ was simply noting that Dr. Emery's relationship with Petitioner was also relatively limited. This was a legitimate fact for the ALJ to consider when considering how to weigh Dr. Emery's against the conflicting opinions of the other psychologists.

### v.    The ALJ's Discussion of Dr. Stephenson's Opinion

As a corollary to her challenge to the ALJ's treatment of Dr. Emery's opinion, Petitioner argues that the ALJ failed to adequately explain why she believed Dr. Stephenson's opinion was consistent with the medical record. Pt.'s Br. at 12 (Dkt. 16). This argument is based on an improperly myopic view of the ALJ's decision. It is true that the paragraph where the ALJ addresses Dr. Stephenson's opinion does not contain any citations to the record. AR 918. If that was all the ALJ had written, Petitioner would have a valid point. But it is not. The ALJ wrote a lengthy decision analyzing and discussing Petitioner's reported activities, the medical evidence, and the medical opinions. AR 899-918. When this decision is read as a whole, the ALJ's

**REPORT AND RECOMMENDATION - 22**

reasoning is not hard to follow.  The ALJ found Dr. Stephenson's opinion credible for the same

reasons she found Dr. Emery's opinion unreliable, i.e., Petitioner's generally normal mental

status examinations and Petitioner's reported social activities, both of which were identified by

citation earlier within the ALJ's decision.

As with many ALJ decisions, this could have been explained with more precision and

lucidity.  But that has never been a basis for reversal.  *See Molina v. Astrue*, 674 F.3d 1104, 1121

(9th Cir. 2012) ("Even when an agency explains its decision with less than ideal clarity, we must

uphold it if the agency's path may reasonably be discerned.") (internal citation omitted).

In reaching this conclusion, the undersigned stresses that the Court's role in reviewing the

Social Security Commissioner's decisions is "a limited one."  *Allen v. Heckler*, 749 F.2d 577,

579 (9th Cir. 1984).  The Court's role is not to nitpick the ALJ's writing and citation practices.

Nor is its job to "reweigh the evidence or substitute [its] judgment for that of the ALJ."  *Ahearn

v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021).  As long as the Court can reasonably follow the

ALJ's reasoning and the evidence rationally supports the ALJ's conclusions, these conclusions

must be affirmed.  *Tommasetti*, 533 F.3d at 1038 and *Molina*, 674 F.3d at 1121; *see also

Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (when diverging medical opinions

provide substantial evidence for two different conclusions, it "solely the province of the ALJ to

resolve the conflict").

Because the ALJ provided rational reasons for preferring the opinions of Drs. Stephenson

and Atkinson over the opinion of Dr. Emery, this Court should affirm the ALJ's weighing of the

medical opinion evidence.

**REPORT AND RECOMMENDATION - 23**

IV. <u>The Lay Witness Statements</u>

Petitioner's fourth challenge on appeal is that the ALJ improperly rejected the lay statements of her family and friends.  Pt.'s Br. at 16-18 (Dkt. 16).  The Ninth Circuit has not yet resolved whether an ALJ must provide germane reasons before rejecting lay statements under the new regulations.  *Ahearn v. Colvin,* No. 23-35572, 2024 U.S. App. LEXIS 31193, 2024 WL 5040995, at *3 (9th Cir. Dec. 9, 2024), *Stephens v. Kijakazi*, No. 22-25998, 2023 U.S. App. LEXIS 27936, 2023 WL 6937296, at *2 (9th Cir. Oct. 20, 2023); and *Fryer v. Kijakazi*, No. 21-36004, 2022 U.S. App. LEXIS 35651, 2022 WL 17958630, at *3 n.1 (9th Cir. Dec. 27, 2022).

The Court need not take a position on this issue, however, because the ALJ's decision satisfies the germane reasons standard.  On remand, the ALJ provided specific critiques of many of the lay witness statements.  AR 903-905.  For example, the ALJ noted that Petitioner's mother incorrectly claimed Petitioner was legally blind.  AR 903.  In addition to providing these particularized comments, the ALJ also indicated that she was rejecting the lay statements for the same reason she was rejecting Petitioner's testimony.  AR 905.

Petitioner does not address any of this reasoning.  Instead, Petitioner mistakenly accuses the ALJ of providing "no reasons for dismissing" the lay statements.  Pt.'s Br. at 18 (Dkt. 16.) As best the undersigned can tell, Petitioner has confused the *original* ALJ's decision with the second ALJ's decision.  Whatever the cause for the misperception, Petitioner's challenge to the current ALJ's treatment of the lay witness statements fails.  When, as here, an ALJ is faced with multiple overlapping witness statements, it has long been the rule that an ALJ need not separately "discuss every witness's testimony on [an] individualized, witness-by-witness basis." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012).  As long as the ALJ gives legally sufficient reasons for rejecting the Petitioner's testimony, "the ALJ need only point to those

**REPORT AND RECOMMENDATION - 24**

reasons when rejecting similar testimony by a [lay] witness." *Id.*; *see also Valentine v. Comm'r SSA*, 574 F.3d 685, 694 (9th Cir. 2009) (an ALJ who provides clear and convincing reasons for rejecting a claimant's subjective complaints may legally reject parallel statements by a lay witness for "the same reasons").  That is exactly what the ALJ did here.  AR 903-905.

V. Petitioner's Vision Loss

Petitioner's final challenge on appeal is that the RFC did not adequately address her visual limitations.  Pt.'s Br. at 19 (Dkt. 16).  It is undisputed that Petitioner has permanent left-sided vision loss in both of her eyes.  AR 905.  To accommodate this impairment, the ALJ included restrictions in the RFC permitting Petitioner to wear a hat, visor, or special shaded lenses in the workplace.  AR 900.  The ALJ also found that Petitioner should avoid unprotected heights and avoid operating a motor vehicle.  *Id.*

Petitioner claims these restrictions are insufficient.  She does not, however, identify any medical evidence to support this claim.[10]  Nor does she identify any other restrictions that should have been incorporated into the RFC to account for her vision deficits.  In the absence of such evidence or argument, Petitioner's claim fails.  *See Valentine*, 574 F.3d at 692 n.2 (refusing to find that ALJ failed to account for petitioner's knee and shoulder injuries in "some unspecified way"); *see also Youngblood v. Berryhill*, 734 Fed. Appx. 496, 498 (9th Cir. 2018) (unpublished) (petitioner's challenge to the RFC was not specifically and distinctly raised, where the petitioner failed to identify the limitations the ALJ should have incorporated into the RFC).

---

[10] Petitioner cites to a 2015 recording documenting her left homonymous hemianopsia.  Pt.'s Br. at 19 (Dkt. 16) (citing AR 432-438).  But this record does not indicate how Petitioner's partial vision loss impacts her day-to-day functioning or ability to complete work tasks.  AR 432-433.

**REPORT AND RECOMMENDATION - 25**

## RECOMMENDATION

Based on the foregoing, IT IS HEREBY RECOMMENDED that the decision of the Commissioner be **AFFIRMED**, that Petitioner's Petition for Review (Dkt. 1) be **DENIED**, and this action be **DISMISSED** in its entirety, with prejudice.

Pursuant to District of Idaho Local Civil Rule 72.1(b)(2), a party objecting to a Magistrate Judge's recommended disposition "must serve and file specific, written objections, not to exceed twenty pages . . . within fourteen (14) days . . ., unless the magistrate or district judge sets a different time period." Additionally, the other party "may serve and file a response, not exceed ten pages, to another party's objections within fourteen (14) days after being served with a copy thereof."

DATED: February 05, 2025

Raymond E. Patricco
Chief U.S. Magistrate Judge

**REPORT AND RECOMMENDATION - 26**